**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**PIKEVILLE DIVISION**
**CASE NO. 6:26-CV-305-CHB**
***Electronically Filed***

**BRIAN EUGENE WOODSON**
**Pike County Detention Center**
**172 Division Street**
**Pikeville, KY 41501**

**PLAINTIFF,**

**v.**

**PIKE COUNTY DETENTION CENTER**
**172 Division Street**
**Pikeville, KY 41501**
**(SERVE: Jailer Brian Morris**
**172 Division Street**
**Pikeville, KY 41501)**
**(serve via certified mail - return receipt requested)**

**AND**

**PIKE COUNTY**
**146 Main Street**
**Pikeville, KY 41501**
**(SERVE: Judge-Executive Ray Jones II**
**146 Main Street**
**Pikeville, KY 41501)**
**(serve via certified mail - return receipt requested)**

**AND**

**JANE AND JOHN DOES 1–20,**
**whose identities are presently unknown, in their individual and official capacities**

**DEFENDANTS.**

**COMPLAINT WITH JURY DEMAND ENDORSED HEREON**

Plaintiff, Brian Eugene Woodson (hereinafter referred to as "Plaintiff"), by and through counsel, brings this civil action against Defendants, individually and/or collectively, and states as follows:

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)–(4) because those claims arise under the Constitution and laws of the United States, including 42 U.S.C. § 1983. This Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367(a) because those claims form part of the same case or controversy.
2. Plaintiff seeks damages, declaratory relief, injunctive relief, costs, attorney's fees as authorized by law, and all other relief available pursuant to 42 U.S.C. §§ 1983 and 1988.
3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the acts and omissions complained of occurred in Pike County, Commonwealth of Kentucky, and the Defendants reside in or conduct governmental operations within Pike County, Commonwealth of Kentucky. Pike County lies within the Pikeville Division and/or London Division (for processing) of the Eastern District of Kentucky, Commonwealth of Kentucky.
4. At all relevant times herein, Defendants, individually and/or collectively, acted under color of state law while performing their official duties.

## PARTIES

5. Plaintiff Brian Eugene Woodson (hereinafter referred to as "Plaintiff") is an adult citizen of the Commonwealth of Kentucky who has been incarcerated at the Pike County Detention Center since on or about October 29, 2025. At all times relevant to this action,

Plaintiff was a sentenced inmate entitled to the protections of the Eighth Amendment to the United States Constitution, as applied to the States through the Fourteenth Amendment.

6. Defendant Pike County, Commonwealth of Kentucky is a political subdivision of the Commonwealth of Kentucky responsible for the operation, funding, supervision, customs, policies, practices, and administration of the Pike County Detention Center. Pike County acts through its Fiscal Court, its Judge-Executive, and its elected Jailer, who at all relevant times exercised final policymaking authority over the operation of the Pike County Detention Center.

7. Defendant Pike County Detention Center (hereinafter referred to as "PCDC") is the county detention facility located at 172 Division Street, Pikeville, Kentucky, and at all relevant times housed Plaintiff while acting under color of state law.

8. Defendants John Does 1–20 are correctional officers, supervisors, classification and housing personnel, administrators, jail employees, and governmental officials whose identities are presently unknown but who participated in, authorized, directed, condoned, or failed to prevent the constitutional violations described herein. These Defendants include, without limitation: the female correctional officer who conducted Plaintiff's intake and directed or influenced his initial housing placement; the correctional officers who escorted Plaintiff to the cell of inmate Tyrone Davis on two occasions after the assault described below; Correctional Officer Younger; the correctional officer known to inmates as "Baby D"; and the supervisory personnel responsible for inmate classification, separation, and housing. Plaintiff will amend this Complaint to identify these Defendants by their full names as discovery progresses.

9. Defendants Jane and John Does 1–20 are nurses, medical contractors, and healthcare employees whose identities are presently unknown but who participated in the unconstitutional delay or denial of medical care to Plaintiff, including the staff nurse who resisted transporting Plaintiff to the hospital following the assault described below/ herein. Plaintiff will amend this Complaint to identify these Defendants upon discovery when necessary in this matter and based upon approval from this Honorable Court.

10. At all relevant times, each Defendant acted individually and/or through their respective agents, servants, employees, contractors, supervisors, and representatives while acting within the course and scope of their employment, agency, apparent authority, and under color of state law.

11. Whenever reference is made in this Complaint to any act or omission of any Defendant, such allegation shall also mean that the officers, employees, agents, servants, contractors, and representatives of said Defendant committed, authorized, ratified, approved, or participated in such act or omission while acting within the course and scope of their employment.

12. At all relevant times, Defendants acted jointly, severally, and in concert with one another, and each Defendant knew or reasonably should have known that the conduct described herein violated Plaintiff's clearly established constitutional rights.

## FACTUAL ALLEGATIONS

### A. Plaintiff's Cooperation with Law Enforcement

13. Plaintiff incorporates by reference each and every preceding paragraph of this Complaint as though fully restated herein.

14. Plaintiff cooperated with law enforcement in drug investigations involving, among others, Tyrone Davis and Ryan Perkins.

15. During those investigations, Plaintiff wore a recording device. The plaintiff did not testify in the related criminal proceedings.

16. Upon information and belief, Davis and Perkins learned of Plaintiff's cooperation through criminal discovery.

17. It is well known among corrections professionals that an inmate who has cooperated with law enforcement against other inmates faces a heightened and obvious risk of violent retaliation if housed with those inmates.

**B. Plaintiff's Sentencing and the Assurance Regarding His Placement**

18. Before his sentencing, Plaintiff advised his attorney, Jay Tanner Hesterberg, that he feared being incarcerated with persons against whom he had provided information.

19. Immediately after Plaintiff's sentencing, while still in the courtroom, Plaintiff's attorney spoke with prosecutor Bill Sloan regarding those concerns and was given an assurance that no one Plaintiff knew was confined at PCDC.

20. That assurance was unequivocally false in this matter. At that time, both Davis and Perkins were already incarcerated at PCDC.

21. Upon information and belief, Defendants knew, or had ready access to information showing, that Plaintiff was a cooperating witness against Davis and Perkins and that both men were then housed at PCDC.

### C. Intake and Housing Placement with Known Enemies

22. On or about October 29, 2025, Plaintiff entered PCDC.

23. During intake, a female correctional officer asked Plaintiff whether he had a problem with anyone at the facility.

24. Relying on advice from counsel, Plaintiff answered that he did not.

25. The intake officer responded, "I have the perfect place to put you."

26. Correctional Officer Gamble then escorted Plaintiff to a cell occupied by Davis and Perkins, the very individuals against whom Plaintiff had cooperated.

27. Upon information and belief, the intake officer's statement and the resulting placement reflect that PCDC personnel knew of Plaintiff's cooperation and of the danger Davis and Perkins posed to him, and placed him in their cell deliberately or in reckless disregard of that danger.

28. Defendants failed to conduct a reasonable classification review, separation check, or enemies screening before placing Plaintiff in a cell with inmates against whom he had cooperated.

### D. The Assault

29. Almost immediately after Plaintiff entered the cell, approximately four to six inmates attacked him, striking, kicking, stomping, and choking him.

30. During the assault, Plaintiff sustained a laceration to his mouth and significant swelling to his head, and he involuntarily urinated on himself.

31. Officer Gamble ordered the inmates to stop and, together with another correctional officer, physically intervened and ended the assault.

32. As Davis was escorted from the cell after the assault, he shouted "Rat! Rat!" Davis also made statements to correctional staff referring to Plaintiff's role in a fentanyl prosecution.

33. From that point forward, at the very latest, Defendants had actual knowledge that Plaintiff had been targeted because of his cooperation with law enforcement and that Davis posed a continuing threat to his safety.

**E. Medical Treatment Following the Assault**

34. Following the assault, Plaintiff was evaluated by PCDC medical personnel.

35. Despite Plaintiff's visible head swelling, his mouth laceration, and the fact that he had just been choked, kicked, and stomped by multiple inmates, the staff nurse did not want to transport Plaintiff to the hospital.

36. Only after Plaintiff insisted was he transported to Pikeville Medical Center, where he underwent a CT scan.

37. Officer Gamble later advised Plaintiff that a PCDC nurse was the sister of Ryan Perkins and that Plaintiff should request protective custody.

38. Upon information and belief, Defendants permitted a medical staff member with a close family relationship to one of Plaintiff's attackers to remain involved in, or to have access to, Plaintiff's medical care and information without taking any steps to address that conflict and/or conflict of interest therein.

**F. Continued Exposure to Davis and Threats After the Assault**

39. Officer Gamble informed Plaintiff that Davis was well known and well liked by the jail staff and that, as an inmate, Davis basically ran the jail.

40. After the assault, correctional officers escorted Plaintiff to Davis's cell on two separate occasions.

41. During one of those encounters, Davis told Plaintiff, "You can't live here" and "This is my jail."

42. The plaintiff was eventually moved to protective custody.

43. After Plaintiff was moved to protective custody, Davis on several occasions lifted the screen covering the window of Plaintiff's housing area, knocked to get Plaintiff's attention, and made threatening gestures toward him.

44. Defendants failed to prevent Davis from approaching Plaintiff's protective-custody housing and failed to take reasonable measures to separate Davis from Plaintiff.

45. Plaintiff's initial placement and the encounters that followed exposed him to a serious and obvious danger. Plaintiff has described his initial placement as being sent "to the wolves."

### G. Conditions of Confinement in Protective Custody

46. Plaintiff was housed in protective custody in Pod Sixteen (16).

47. While in protective custody, Plaintiff was housed with approximately twenty-one (21) other inmates in a dorm designed for twelve (12) people.

48. Because of the overcrowding and inadequate sleeping arrangements, Plaintiff was forced to sleep on the floor.

49. Inmates in Pod Sixteen (16) were intermittently deprived of cleaning supplies.

50. From approximately June 20 through June 25, 2026, adequate toilet paper was unavailable in Pod Sixteen (16). During that period, approximately nineteen (19) to twenty-one (21) inmates shared four rolls of toilet paper.

51. Because of the lack of toilet paper, some inmates resorted to showering after using the toilet in order to clean themselves.

52. The officer known as "Baby D" required protective-custody inmates, including Plaintiff, to enter a general-population hallway to retrieve their food trays, defeating the very purpose of protective custody and exposing Plaintiff to the inmates from whom he was supposed to be separated.

53. Plaintiff perceived this practice as an intimidation tactic, and it caused him continuing fear for his safety.

**H. Grievances and Retaliation**

54. Plaintiff filed multiple grievances concerning his treatment and conditions of confinement, including grievances numbered 107104, 1039472, 1076488, 1085180, 102997, 1088195, 1059952, 1090004, 1055579, and 1092520.

55. The officer known as "Baby D" instructed Plaintiff to stop filing grievances.

56. On or about June 26, 2026, after Plaintiff requested toilet paper, Correctional Officer Younger threatened Plaintiff and had him confined separately, in segregation, for approximately eight (8) hours.

57. No disciplinary report was issued against Plaintiff in connection with that confinement, and Plaintiff was given no legitimate reason for it. The plaintiff was placed in segregation for asking for toilet paper.

58. Plaintiff's grievances were unanswered or failed to provide any meaningful relief.

**I. Plaintiff's Injuries**

59. As a direct and proximate result of the assault and the subsequent events described above, Plaintiff has suffered physical injuries, pain, fear for his safety, humiliation, emotional distress, and mental anguish.

**J. Policies, Customs, Practices, and Failure to Train (Monell Liability)**

60. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully restated herein.

61. The constitutional violations described herein were not isolated incidents, accidental occurrences, or the result of mere negligence.

62. Rather, the violations were the direct and foreseeable result of official customs, policies, longstanding practices, deliberate indifference, and failures to supervise, train, and discipline employees of Pike County and PCDC.

63. At all relevant times, Defendant Pike County, through its policymakers, was responsible for establishing, implementing, supervising, and enforcing policies governing inmate classification, separation of inmates with known enemies, protective custody, housing assignments, inmate safety, medical care, conditions of confinement, inmate capacity, sanitation and hygiene supplies, grievance procedures, and correctional officer conduct.

64. The Pike County Jailer possessed final policymaking authority concerning the day-to-day operation of PCDC, including inmate housing, classification, separation, protective custody, medical procedures, grievance administration, and correctional practices.

65. Upon information and belief, Pike County's final policymakers either personally participated in, authorized, ratified, knowingly permitted, or failed to correct the unconstitutional practices described throughout this Complaint.

66. Defendants received repeated notice of the unconstitutional conditions described herein through written grievances, inmate request forms, verbal complaints, and direct observation by correctional staff.

67. Despite receiving repeated notice, Defendants routinely denied, ignored, delayed, or failed to adequately investigate Plaintiff's complaints.

68. Upon information and belief, Defendants maintained customs of failing to screen incoming inmates for known enemies and of housing inmates who had cooperated with law enforcement together with the very inmates against whom they had cooperated.

69. Upon information and belief, Defendants maintained customs of permitting favored inmates, including Davis, to exercise influence over jail operations, housing, and the treatment of other inmates.

70. Upon information and belief, Defendants maintained customs of failing to keep protective-custody inmates separated from general-population inmates, including by requiring protective-custody inmates to retrieve food trays in general-population areas and by permitting general-population inmates to approach and threaten protective-custody inmates.

71. Upon information and belief, Defendants maintained customs of housing inmates well beyond the design capacity of their housing units, forcing inmates to sleep on the floor, and failing to provide adequate toilet paper and cleaning supplies.

72. Upon information and belief, Defendants maintained customs of delaying or discouraging necessary outside medical treatment for injured inmates.

73. Upon information and belief, Defendants maintained customs of discouraging inmate grievances and of punishing inmates who complained about conditions, including by placing them in segregation without disciplinary process.

74. Upon information and belief, Defendants failed to properly train correctional officers concerning constitutional requirements governing:

a. inmate classification and the separation of inmates with known enemies;

b. the protection of inmates who have cooperated with law enforcement;

c. protective custody;

d. inmate medical care and emergency transport;

e. conditions of confinement, capacity, and sanitation;

f. access to courts and attorney-client communications;

g. religious accommodations;

h. equal protection;

i. grievance investigations and the prohibition on retaliation; and,

j. protection of inmates from known risks of serious harm.

75. Defendants failed to adequately supervise correctional officers and medical personnel despite repeated notice of recurring constitutional violations.

76. Defendants failed to adequately discipline correctional officers and supervisory personnel responsible for violating inmates' constitutional rights.

77. Upon information and belief, Pike County failed to implement reasonable procedures designed to ensure that inmate grievances concerning inmate safety, protective custody, medical treatment, sanitation, and retaliation were fairly investigated and resolved.

78. Upon information and belief, similar complaints regarding inmate safety, classification failures, overcrowding, inadequate sanitation, and retaliation had been made by other inmates before Plaintiff's injuries occurred.

79. Despite notice of recurring constitutional violations, Pike County consistently failed to adequately investigate, discipline responsible employees, modify policies, or implement corrective measures.

80. Upon information and belief, the repeated nature of these complaints demonstrates that the unconstitutional customs alleged herein were widespread, longstanding, and known to final policymakers.

81. The constitutional violations suffered by Plaintiff were the moving force behind his injuries and were a direct and foreseeable consequence of the policies, customs, practices, and deliberate indifference of Defendant Pike County and its final policymakers.

82. The conduct of Defendants was intentional, reckless, willful, malicious, oppressive, and demonstrated deliberate indifference to Plaintiff's federally and state protected rights.

83. As a direct and proximate result of Defendants' unconstitutional customs, policies, practices, and deliberate indifference, Plaintiff has suffered physical injury, emotional distress, mental anguish, loss of constitutional rights, humiliation, and other damages recoverable under federal law.

**K. Exhaustion of Administrative Remedies**

84. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully restated herein.

85. At all times relevant to this action, PCDC maintained an inmate grievance procedure through which inmates were instructed to submit complaints regarding their safety, housing

assignments, medical care, conditions of confinement, and other matters affecting their incarceration.

86. Throughout his incarceration, Plaintiff utilized the grievance process made available by Defendants.

87. Plaintiff submitted numerous written grievances, including grievances numbered 107104, 1039472, 1076488, 1085180, 102997, 1088195, 1059952, 1090004, 1055579, and 1092520, concerning his treatment and the conditions of his confinement.

88. Despite Plaintiff's repeated use of the grievance system, Defendants denied, ignored, delayed, or failed to meaningfully investigate Plaintiff's complaints.

89. In numerous instances, Plaintiff received no response whatsoever to his grievances.

90. Defendants further discouraged Plaintiff from using the grievance process, including when the officer known as "Baby D" instructed Plaintiff to stop filing grievances.

91. To the extent additional administrative remedies existed, Defendants rendered those remedies unavailable through non-responses, intimidation, and obstruction.

92. Plaintiff exhausted all administrative remedies that were actually available to him as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a).

93. Alternatively, any further administrative remedies were unavailable, ineffective, futile, obstructed, or otherwise incapable of providing meaningful relief due to Defendants' actions and omissions.

94. Plaintiff has therefore satisfied all conditions precedent to maintaining this civil action or, alternatively, such conditions have been excused because Defendants rendered the grievance process unavailable through their own conduct.

**COUNT I - DEPRIVATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983**
**Deliberate Indifference to Serious Medical Needs**
**(Eighth and Fourteenth Amendments)**

95. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully restated herein.

96. At all times relevant to this action, Plaintiff was a sentenced inmate entitled to the protections of the Eighth Amendment to the United States Constitution, as applied to the States through the Fourteenth Amendment.

97. Defendants, acting under color of state law, owed Plaintiff a constitutional duty to provide adequate medical care for his serious medical needs.

98. Following the assault, Plaintiff suffered serious medical needs, including a laceration to his mouth, significant swelling to his head, and injuries consistent with having been choked, kicked, and stomped by multiple inmates.

99. Plaintiff's injuries were so obvious that even a lay person would easily recognize the necessity for prompt medical attention.

100. Defendants knew of Plaintiff's serious medical needs through their own observation of his injuries, their knowledge of the assault, and Plaintiff's complaints.

101. Despite that knowledge, the PCDC staff nurse resisted transporting Plaintiff to the hospital, and Plaintiff was transported to Pikeville Medical Center only after he insisted.

102. Upon information and belief, Defendants permitted a medical staff member who is the sister of one of Plaintiff's attackers to remain involved in, or to have access to, Plaintiff's medical care without addressing that conflict.

103. Defendants knew that delaying or denying appropriate treatment for a head injury sustained in a multi-inmate assault created a substantial risk of serious harm, and they consciously disregarded that risk.

104. The actions and omissions of Defendants were intentional, reckless, willful, malicious, or demonstrated deliberate indifference to Plaintiff's constitutional rights.

105. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered physical injury, pain and suffering, emotional distress, mental anguish, and other damages.

106. The conduct of Defendants deprived Plaintiff of rights secured by the Eighth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

107. Defendant Pike County is further liable because the constitutional deprivation resulted from its policies, customs, practices, failure to train, failure to supervise, failure to discipline, and deliberate indifference to the constitutional rights of inmates requiring medical care.

108. The unconstitutional customs and policies maintained by Pike County were the moving force behind the constitutional injuries suffered by Plaintiff.

109. As a direct and proximate result of Defendants' conduct, Plaintiff has sustained damages in an amount to be determined by the jury. Said damages are ongoing to date.

## COUNT II - DEPRIVATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
**Unconstitutional Conditions of Confinement**
**(Eighth and Fourteenth Amendments)**

110. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully restated herein.

111. At all times relevant to this action, Plaintiff was entitled to protection under the Eighth Amendment to the United States Constitution, as applied to the States through the Fourteenth Amendment.

112. Defendants, acting under color of state law, had a constitutional duty to ensure that Plaintiff was not subjected to conditions of confinement that deprived him of the minimal civilized measure of life's necessities or that posed a substantial risk of serious harm to his health and safety.

113. Defendants knowingly housed Plaintiff in a protective-custody dorm holding approximately twenty-two (22) inmates in a space designed for twelve (12), forcing Plaintiff to sleep on the floor.

114. Defendants intermittently deprived Plaintiff and the other inmates in Pod 16 of cleaning supplies.

115. From approximately June 20 through June 25, 2026, Defendants failed to provide adequate toilet paper, leaving approximately nineteen (19) to twenty-one (21) inmates to share four rolls and forcing some inmates to shower after using the toilet in order to clean themselves.

116. When Plaintiff requested toilet paper, Defendants responded not by providing it but by threatening Plaintiff and placing him in segregation for approximately eight hours.

117. Defendants further required Plaintiff, a protective-custody inmate, to enter a general-population hallway to retrieve his food, exposing him to the very risk of violence that protective custody was meant to prevent.

118. Defendants were placed on notice of these conditions through grievances, verbal complaints, and their own direct observations.

119. Despite actual knowledge of these conditions, Defendants failed and refused to take reasonable corrective action.

120. Defendants knew that the cumulative effect of these conditions, including overcrowding, inadequate sleeping arrangements, deprivation of basic hygiene supplies, unsanitary conditions, and exposure to general-population inmates, created a substantial risk of serious harm to Plaintiff's health, safety, and well-being, and they consciously disregarded that risk.

121. The conduct of Defendants constituted cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments.

122. Defendant Pike County is liable because the unconstitutional conditions of confinement resulted from official policies, customs, practices, failures to supervise, failures to train, inadequate staffing and capacity, deliberate indifference, and the ratification of unconstitutional conduct by final policymakers.

123. The unconstitutional customs and practices of Pike County were the moving force behind the violations of Plaintiff's constitutional rights and the injuries he sustained. The injuries are ongoing to date.

**COUNT III - DEPRIVATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983**
**Denial of Access to the Courts and Interference with Attorney-Client Communications**
**(First and Fourteenth Amendments)**

124. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully restated herein.

125. At all times relevant to this action, Plaintiff possessed clearly established constitutional rights under the First and Fourteenth Amendments to meaningful access to

the courts, to petition the government for redress of grievances, and to confidential communications with legal counsel.

126. Defendants, acting under color of state law, had a constitutional duty to refrain from unreasonably interfering with Plaintiff's ability to communicate with counsel, pursue legal claims, and use the administrative grievance process that the Prison Litigation Reform Act requires inmates to exhaust before filing suit.

127. Defendants interfered with Plaintiff's ability to exhaust administrative remedies and pursue his legal claims, including when the officer known as "Baby D" instructed Plaintiff to stop filing grievances and when Defendants failed to respond to Plaintiff's numerous grievances.

128. Defendants knew, or reasonably should have known, that obstructing the grievance process and interfering with Plaintiff's legal communications would substantially burden Plaintiff's constitutional right of access to the courts.

129. The actions of Defendants were not reasonably related to legitimate penological interests.

130. Defendant Pike County maintained customs, policies, or practices permitting the obstruction of inmate grievances and interference with inmates' access to the courts.

131. Defendant Pike County further failed to adequately train and supervise correctional personnel regarding inmates' constitutional rights relating to grievances, legal communications, attorney-client privilege, and access to the courts.

132. As a direct and proximate result of Defendants' conduct, Plaintiff suffered interference with the preparation and prosecution of his legal claims, emotional distress, and other injuries recognized under federal law.

133. Defendants' conduct was intentional, reckless, willful, malicious, and objectively unreasonable, and violated Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution.

134. Plaintiff is entitled to recover compensatory damages, punitive damages against the individual Defendants, declaratory relief, injunctive relief, attorney's fees pursuant to 42 U.S.C. § 1988, costs of this action, and all other relief authorized by law. Said damages are ongoing to date.

**COUNT IV - DEPRIVATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983**
**Violation of the First Amendment Right to Free Exercise of Religion**
**(First and Fourteenth Amendments)**

135. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully restated herein.

136. At all times relevant to this action, Plaintiff held sincere religious beliefs protected by the First and Fourteenth Amendments to the United States Constitution.

137. Defendants were aware of Plaintiff's sincerely held religious beliefs and his requests to participate in religious activities while incarcerated.

138. Defendants failed to conduct any individualized assessment regarding whether Plaintiff could safely participate in religious activities under appropriate supervision and failed to consider reasonable alternatives that would have allowed Plaintiff to practice his faith while maintaining institutional security.

139. The restrictions imposed upon Plaintiff substantially burdened his sincerely held religious beliefs and interfered with his ability to freely exercise his religion.

140. The restrictions were not reasonably related to a legitimate penological interest.

141. Defendant Pike County maintained customs, policies, or practices that permitted correctional staff to deny inmates meaningful access to religious services and religious materials without adequate review or justification.

142. Defendant Pike County further failed to adequately train and supervise correctional staff concerning inmates' constitutional rights to freely exercise their religion.

143. The actions and omissions of Defendants deprived Plaintiff of rights secured by the First and Fourteenth Amendments and were undertaken under color of state law.

144. As a direct and proximate result of Defendants' conduct, Plaintiff suffered emotional distress, spiritual hardship, loss of religious opportunities, mental anguish, and other damages recognized under federal law.

145. The conduct of Defendants was intentional, reckless, willful, malicious, and objectively unreasonable, thereby entitling Plaintiff to recover all damages and equitable relief available under 42 U.S.C. § 1983. Said damages are ongoing to date in this matter and the potential equitable relief request continues ongoing to date.

**COUNT V - DEPRIVATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983**
**Denial of Equal Protection of the Laws**
**(Fourteenth Amendment)**

146. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully restated herein.

147. At all times relevant to this action, Plaintiff was entitled to the equal protection of the laws as guaranteed by the Fourteenth Amendment to the United States Constitution.

148. Defendants, acting under color of state law, were prohibited from intentionally treating Plaintiff differently than similarly situated inmates without a rational basis or other constitutionally permissible justification.

149. Defendants intentionally subjected Plaintiff to disparate treatment in his housing placement, his protection from known threats, and the conditions of his confinement.

150. Upon information and belief, Defendants afforded Davis, an inmate well liked by jail staff who was described as basically running the jail, favorable treatment and influence over jail operations, while subjecting Plaintiff, a cooperating witness against Davis, to placement in Davis's cell, repeated escorts to Davis's cell, and continued exposure to Davis's threats.

151. Defendants required Plaintiff and other protective-custody inmates to retrieve their food trays in a general-population hallway, a burden not imposed on other inmates and one that defeated the purpose of their protective classification.

152. Defendants placed Plaintiff in segregation without any disciplinary report after he requested toilet paper.

153. Defendants failed to provide a legitimate, individualized justification for this disparate treatment.

154. The disparate treatment described herein was intentional, arbitrary, and not rationally related to any legitimate governmental objective.

155. Upon information and belief, Defendant Pike County maintained customs, policies, or practices that permitted arbitrary inmate classifications, favoritism toward particular inmates, inconsistent enforcement of jail policies, unequal treatment of inmates, and inadequate review of inmate grievances concerning such treatment.

156. Defendant Pike County further failed to adequately train and supervise correctional personnel regarding the constitutional requirement that similarly situated inmates receive equal treatment under the law.

157. The customs, policies, failures to train, and failures to supervise maintained by Defendant Pike County were the moving force behind the constitutional violations suffered by Plaintiff.

158. As a direct and proximate result of Defendants' conduct, Plaintiff suffered physical injury, emotional distress, humiliation, fear for his safety, and other compensable injuries.

159. Defendants' actions deprived Plaintiff of the equal protection of the laws guaranteed by the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

160. The conduct of Defendants was intentional, reckless, willful, malicious, objectively unreasonable, and undertaken with deliberate indifference to Plaintiff's constitutional rights.

**COUNT VI - DEPRIVATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983**
**Failure to Protect from Known Risk of Serious Harm**
**(Eighth and Fourteenth Amendments)**

161. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully restated herein.

162. At all times relevant to this action, Plaintiff was entitled to protection under the Eighth Amendment to the United States Constitution, as applied to the States through the Fourteenth Amendment.

163. Defendants, acting under color of state law, had an affirmative constitutional duty to take reasonable measures to protect Plaintiff from violence at the hands of other inmates while he was confined at PCDC.

164. Plaintiff faced a substantial and obvious risk of serious harm from Davis and Perkins because Plaintiff had cooperated with law enforcement in investigations involving them, and both were then confined at PCDC.

165. Upon information and belief, Defendants knew of that risk. The intake officer, after asking whether Plaintiff had a problem with anyone at the facility, stated, "I have the perfect place to put you," and Plaintiff was then placed directly in the cell occupied by Davis and Perkins.

166. Defendants failed to conduct any reasonable classification review, enemies screening, or separation check before placing Plaintiff in that cell.

167. Almost immediately after Plaintiff entered the cell, approximately four to six inmates attacked him, striking, kicking, stomping, and choking him, causing physical injury.

168. After the assault, Davis shouted "Rat! Rat!" and referred to Plaintiff's role in a fentanyl prosecution in the presence of correctional staff, giving Defendants actual knowledge that Plaintiff had been targeted because of his cooperation.

169. Despite that actual knowledge, correctional officers escorted Plaintiff back to Davis's cell on two separate occasions after the assault, where Davis told Plaintiff, "You can't live here" and "This is my jail."

170. After Plaintiff was moved to protective custody, Defendants permitted Davis to approach Plaintiff's housing area on several occasions, lift the window screen, knock to get Plaintiff's attention, and make threatening gestures toward him.

171. Defendants further required Plaintiff to enter a general-population hallway to retrieve his food trays, exposing him to the general-population inmates from whom he was supposed to be protected.

172. Defendants permitted Davis, who was known to staff and described as basically running the jail, to exercise influence over the jail and to continue threatening Plaintiff.

173. Defendants possessed the authority and ability to classify and separate inmates, verify enemies before housing assignments, keep Plaintiff away from Davis and Perkins, enforce the separation of protective-custody inmates, and otherwise protect Plaintiff from the known risk.

174. Despite possessing those available options, Defendants failed to take timely and reasonable action and instead knowingly disregarded an excessive risk to Plaintiff's safety.

175. Defendant Pike County maintained customs, policies, or practices that inadequately addressed the classification and separation of inmates with known enemies, the protection of cooperating witnesses, protective custody, inmate threats, and housing safety.

176. Defendant Pike County further failed to adequately train, supervise, and discipline correctional officers regarding their constitutional obligation to protect inmates from known risks of serious harm.

177. The customs, policies, failures to supervise, and failures to train maintained by Defendant Pike County were the moving force behind the constitutional violations suffered by Plaintiff.

178. As a direct and proximate result of Defendants' conduct, Plaintiff suffered physical injury, pain, emotional distress, fear, anxiety, mental anguish, humiliation, loss of personal security, and other damages recoverable under 42 U.S.C. § 1983.

179. Defendants' actions and omissions deprived Plaintiff of rights secured by the Eighth and Fourteenth Amendments to the United States Constitution.

180. The conduct of Defendants was intentional, reckless, willful, malicious, and undertaken with deliberate indifference to Plaintiff's clearly established constitutional rights.

**COUNT VII - DEPRIVATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983**
**First Amendment Retaliation**

181. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

182. At all times relevant to this action, Plaintiff possessed clearly established rights under the First and Fourteenth Amendments to file grievances, complain about the conditions of his confinement, request basic necessities, and otherwise petition the government for redress of grievances.

183. Plaintiff repeatedly exercised these constitutional rights by filing grievances, including grievances numbered 107104, 1039472, 1076488, 1085180, 102997, 1088195, 1059952, 1090004, 1055579, and 1092520, and by complaining about and requesting relief from the conditions of his confinement, including the lack of toilet paper.

184. Defendants were aware that Plaintiff was actively exercising these protected constitutional rights.

185. In response, the officer known as "Baby D" instructed Plaintiff to stop filing grievances.

186. On or about June 26, 2026, after Plaintiff requested toilet paper, Officer Younger threatened Plaintiff and had him confined in segregation for approximately eight hours, without any disciplinary report and without any legitimate reason.

187. Upon information and belief, Defendants, including the officer known as "Baby D," also required Plaintiff and other protective-custody inmates to retrieve food trays in a general-population hallway as a means of intimidating them.

188. These adverse actions would deter a person of ordinary firmness from continuing to file grievances or exercise other protected constitutional rights.

189. These actions were taken, at least in part, because Plaintiff exercised his constitutional rights by filing grievances and complaining about the conditions of his confinement.

190. There existed a causal connection between Plaintiff's protected conduct and the adverse actions taken against him, as shown by, among other things, the explicit instruction to stop filing grievances and the immediate placement in segregation following Plaintiff's request for toilet paper.

191. Defendants lacked a legitimate penological justification for retaliating against Plaintiff for exercising his constitutional rights.

192. Defendant Pike County maintained customs, policies, or practices that tolerated or failed to prevent retaliation against inmates who exercised protected constitutional rights.

193. Defendant Pike County further failed to adequately train, supervise, and discipline correctional personnel regarding inmates' clearly established First Amendment rights.

194. The customs, policies, failures to supervise, and failures to train maintained by Defendant Pike County were the moving force behind the constitutional violations alleged herein.

195. As a direct and proximate result of Defendants' retaliatory conduct, Plaintiff suffered emotional distress, mental anguish, punitive segregation, fear for his safety, loss of constitutional rights, and other compensable damages.

196. Defendants acted intentionally, maliciously, recklessly, and with deliberate indifference to Plaintiff's clearly established constitutional rights.

197. Defendants' conduct violated Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

## COUNT VIII - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

198. Plaintiff incorporates by reference each and every preceding paragraph of this Complaint as though fully restated herein.

199. Defendants Jane and John Does 1–20, including, but not necessarily limited to, the intake officer, the officers who escorted Plaintiff to Davis's cell after the assault, Officer Younger, and the officer known as "Baby D," engaged in, authorized, ratified, knowingly permitted, or deliberately failed to correct a course of extreme and outrageous conduct directed toward Plaintiff.

200. Defendants knew that Plaintiff was an inmate entirely dependent upon them for his safety, medical care, sanitation, and other basic necessities of life.

201. Defendants further knew, or upon information and belief knew, that Plaintiff had cooperated with law enforcement against Davis and Perkins and that housing him with them would expose him to violent retaliation.

202. Despite that knowledge, the intake officer told Plaintiff, "I have the perfect place to put you," and Plaintiff was placed in the cell of the very inmates against whom he had cooperated, where he was immediately beaten, kicked, stomped, and choked by multiple inmates until he urinated on himself.

203. After the assault, and after Davis announced in front of staff that Plaintiff was a "rat," correctional officers escorted Plaintiff back to Davis's cell on two separate occasions, where Davis told Plaintiff, "You can't live here" and "This is my jail."

204. Defendants permitted Davis to continue approaching and threatening Plaintiff after Plaintiff was moved to protective custody, and required Plaintiff to enter a general-population hallway to retrieve his food.

205. Defendants resisted transporting Plaintiff to the hospital after the assault despite his obvious injuries.

206. Defendants subjected Plaintiff to overcrowded conditions in which he was forced to sleep on the floor, deprived him of toilet paper and cleaning supplies, and, when he asked for toilet paper, threatened him and placed him in segregation.

207. Defendants instructed Plaintiff to stop filing grievances and ignored the grievances he filed.

208. Plaintiff repeatedly notified Defendants of his fear for his safety, his humiliation, and his emotional distress.

209. Notwithstanding Plaintiff's complaints and requests for assistance, Defendants continued, ratified, approved, tolerated, or consciously failed to correct the conduct described above.

210. The conduct alleged herein was intentional or reckless and was so extreme and outrageous in character, and so intolerable in a civilized community, that it exceeded all reasonable bounds of decency.

211. Defendants knew or reasonably should have known that their conduct would cause Plaintiff severe emotional distress, particularly because Plaintiff was confined, vulnerable, and dependent upon Defendants for his safety and basic needs.

212. Defendants acted intentionally, recklessly, willfully, maliciously, and with conscious disregard for the probability that their conduct would cause Plaintiff severe emotional harm.

213. As a direct and proximate result of Defendants' conduct, Plaintiff suffered severe emotional distress, fear, anxiety, humiliation, mental anguish, loss of sleep, loss of dignity, and other psychological injuries.

214. Plaintiff's emotional distress was severe, substantial, and of a nature that no reasonable person should be expected to endure.

215. The conduct of the individual Defendants was sufficiently willful, malicious, oppressive, reckless, and undertaken with such conscious disregard for Plaintiff's rights and well-being as to support an award of punitive damages under Kentucky law.

216. Plaintiff pleads this claim in the alternative to the extent Kentucky law determines that the emotional injuries alleged herein are not fully compensated under Plaintiff's remaining causes of action.

217. Plaintiff is therefore entitled to recover compensatory damages, punitive damages against the individual Defendants where permitted by law, costs, interest, and all other relief available under Kentucky law. Said damages are ongoing to date in this matter.

## COUNT IX - INVASION OF PRIVACY

218. Plaintiff incorporates by reference each and every preceding paragraph of this Complaint as though fully set forth herein.

219. At all times relevant herein, Plaintiff possessed a reasonable expectation of privacy in his confidential information, including his medical information and his status as a person who had cooperated with law enforcement.

220. Defendants knew or reasonably should have known that such information was private and that its disclosure within a detention facility would expose Plaintiff to humiliation and to a serious risk of violence.

221. Defendants intentionally intruded upon Plaintiff's private affairs, and/or gave publicity to private facts concerning Plaintiff, in a manner that would be highly offensive to a reasonable person and that served no legitimate correctional or medical purpose.

222. As a direct and proximate result of Defendants' conduct, Plaintiff suffered humiliation, embarrassment, emotional distress, anxiety, fear for his safety, mental anguish, and other compensable damages.

223. Defendants' conduct was intentional, reckless, willful, malicious, and undertaken with conscious disregard for Plaintiff's privacy rights.

224. Plaintiff is entitled to recover compensatory damages, punitive damages against the individual Defendants where permitted by Kentucky law, costs, interest, and all other relief to which he may be entitled. Said damages are ongoing to date.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Brian Eugene Woodson respectfully requests that this Honorable Court enter judgment in his favor and against Defendants, jointly and severally where permitted by law, and award the following relief:

a. A declaration that the acts, omissions, customs, policies, and practices of Defendants violated Plaintiff's rights, including but not limited to herein, under the First, Eighth, and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983;

b. Compensatory damages against all Defendants, jointly and severally where permitted by law, in an amount to be determined by the jury for Plaintiff's physical injuries, pain and suffering, emotional distress, mental anguish, humiliation, loss of enjoyment of life, loss of constitutional rights, and all other damages recoverable under federal and state law;

c. Punitive damages against the individual Defendants in their individual capacities in an amount sufficient to punish and deter similar misconduct, as permitted by law;

d. Preliminary and permanent injunctive relief requiring Defendants to cease unconstitutional practices and to implement policies and procedures that protect the constitutional rights of inmates, including but not limited to inmate classification and enemies screening, separation of cooperating witnesses from the inmates against whom they cooperated, protective custody, adequate medical care, constitutionally adequate capacity and sanitation, grievance procedures, and protection against retaliation, to the extent such relief is available;

e. An award of reasonable attorney's fees, expert witness fees where authorized, litigation expenses, and costs pursuant to 42 U.S.C. §§ 1983 and 1988 and all other applicable provisions of law;

f. Prejudgment and post-judgment interest as permitted by law; and,

g. Such other legal and equitable relief as this Court deems just, proper, and equitable herein.

Respectfully submitted,

*/s/ Alan Statman*

Alan Statman (#84752)
Statman Harris, LLC
35 E. 7th Street, Suite 315
Cincinnati, Ohio 45202
Tel: 513 621-2666
Fax: 513 621-4896
ajstatman@statmanharris.com

**/s/ David L. Drake**
David L. Drake (#19043)
David L. Drake Attorney At Law II PSC
5247 Madison Pike
Independence, KY 41051
Ph: (859)-363-1900
Fax: (859)-363-1444
drakelawky@yahoo.com
llittle@ericdeters.com

**JURY DEMAND**

Plaintiff respectfully requests a jury trial on all issues so triable in this matter.

*/s/ Alan Statman*